MEYERS MCCONNELL REISZ SIDERMAN, P.C.
Lori E. Siderman, Bar No. 007515
1745 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 253-1377
Facsimile: (702) 248-6192
siderman@meyersmcconnell.com
*Attorneys for Navigators Insurance Company*

*Of Counsel:*
WILEY REIN LLP
Richard A. Simpson
Charles C. Lemley
1776 K Street NW
Washington, D.C. 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| NAVIGATORS INSURANCE COMPANY,<br><br>*Plaintiff,*<br><br>v.<br><br>REAL ESTATE VALUATION SERVICES, LLC; CAROL JONES; FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR AMTRUST BANK,<br><br>*Defendants.* | CASE NO: _____<br><br>DEPT. NO: _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Navigators Insurance Company ("Navigators"), for its

Complaint for Declaratory Judgment, alleges on knowledge, information

and belief as follows:

## **NATURE OF THE ACTION**

1.     Navigators files this action to obtain a judicial

determination and declaration as to the parties' respective rights and

obligations under Real Estate Appraisers Errors and Omissions Insurance Policy No. PH11RAL100610IV, which Navigators issued to Carol Jones for the **policy period** August 1, 2011 to August 1, 2012 (the "Policy").[1] A true and correct copy of the Policy, without the application, is attached hereto as Exhibit A.

2.      An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Policy.

3.      In particular, Navigators seeks a declaratory judgment that the Policy does not afford indemnity coverage for a **claim** asserted by Defendant the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for AmTrust Bank (the "FDIC-R"), against Jones and her appraisal company, Real Estate Valuation Services, LLC (the "Underlying *FDIC-R* Claim"), by virtue of a Policy exclusion barring coverage for **Regulatory Claims**, *i.e.*, **claims** based on or arising out of any **claim** made by, or on behalf of, the FDIC or any similar regulatory agency.

4.      Navigators also seeks a determination that it has no duty to defend Jones or Real Estate Valuation Services, LLC, in connection with the Underlying *FDIC-R* Claim, but is instead obligated only to pay **claim expenses** incurred by Jones in defense of the Underlying *FDIC-R* Claim up to the applicable $100,000 aggregate sublimit of liability for **Regulatory Claims**.

## PARTIES

5.      Plaintiff Navigators is a corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York.  Navigators legally transacts insurance

---

[1] Terms bolded herein are defined in the Policy.

business in the State of Nevada and within the geographical jurisdiction of this Court.

6.      Defendant Real Estate Valuation Services, LLC ("REVS") is a limited liability corporation organized under the laws of the state of Nevada with its principal place of business in Las Vegas, Nevada.

7.      Defendant Jones is an individual residing in Las Vegas, Nevada, and is a citizen of Nevada.  Upon information and belief, Jones was an owner, agent or employee of REVS at all times relevant hereto.

8.      AmTrust Bank was a federally chartered savings bank with its main office and principal place of business in Cleveland, Ohio.  On December 4, 2009, the Office of Thrift Supervision closed AmTrust Bank and appointed the FDIC to serve as receiver for AmTrust Bank pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(5).

## JURISDICTION AND VENUE

9.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, for the purposes of determining a question of actual controversy between the parties as described more fully below.

10.     This action is currently ripe for adjudication.

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A) because the FDIC is a party and therefore this controversy arises under the laws of the United States.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.  A substantial part of the events giving rise to the claims at issue occurred in this District, and the individual defendant resides in this District.

# FACTUAL ALLEGATIONS

## The Policy

13.    Navigators issued the Policy to Jones for the claims made and reported **policy period** of August 1, 2011 to August 1, 2012. Policy (Ex. A), Declarations, Items 1 & 3.

14.    Subject to all applicable terms, conditions and exclusions, the Policy provides that Navigators, the **Company**, will pay on behalf of the **Named Insured**

> all sums in excess of the deductible that the **Named Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Named Insured** and reported in writing to the **Company** during the **policy period** or **extended reporting period** (if applicable) by reason of an act or omission, including **personal injury**, in the performance of **professional services** by the **Named Insured**[.]

Policy (Ex. A), Section I.A.

15.    Jones is designated in Item 1 of the Declarations as the **Named Insured.** Policy (Ex. A), Declarations, Item 1.

16.    Pursuant to Endorsement No. 3, REVS is "insured under [the Policy] solely for vicarious liability arising from professional services performed by the Named Insured," Jones. Policy (Ex. A), Endorsement No. 3.

17.    **Claim** means "a demand for money or services received by the **Named Insured** arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit or the institution of any arbitration proceeding against the **Named Insured**." Policy (Ex. A), Section III.B.

18.    The Policy defines **damages** to include "any compensatory sum and includes a judgment, award or settlement,

provided any settlement is negotiated with the **Company**'s written consent," but does not include certain specified items.  Policy (Ex. A), Section III.E.

19.   The Policy defines **claim expenses** to include "[f]ees charged by attorneys designated by the **Company** or designated by the **Named Insured** with the **Company's** prior written consent"and "[a]ll other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a **claim**, if incurred by the **Company** or by the **Named Insured** with the **Company's** prior written consent."  Policy (Ex. A), Section III.C.

20.   The Policy has a $500,000 per **claim** limit of liability for **damages** and a $500,000 per **claim** limit of liability for **claim expenses**. Policy (Ex. A), Section II.A.-B. & Declarations, Item 4.

21.   The Policy also has a $1,000,000 aggregate limit of liability for **damages** and a $1,000,000 aggregate limit of liability for **claim expenses**.  Policy (Ex. A), Section II.C.-D. & Declarations, Item 4.

22.   In Section IV., "Exclusions," the Policy provides that "[t]he **Company** will not defend or pay any **claim**" based on or arising out of specified circumstances.  *See generally* Policy (Ex. A), Section IV.

23.   Endorsement No. 2 to the Policy — titled "Regulatory Claims Sublimit – Claim Expenses Endorsement" — provides as follows:

> In consideration of the premium charged, it is agreed that the following is added to Section IV. EXCLUSIONS of the policy:
>
> [The **Company** will not defend or pay any **claim** . . . ]
>
> Q. Based on or arising out of any **claim** made by, or on behalf of, the Federal Deposit Insurance Corporation or any similar federal or state regulatory agency (a 'Regulatory Claim').

It is further agreed that the following is added to Section II. LIMITS OF LIABILITY AND DEDUCTIBLE of the policy:

K.   Regulatory Claims Sublimit

Notwithstanding Exclusion Q., the **Company** will pay on behalf of the **Named Insured**, **claim expenses** incurred by the **Named Insured** in defense of a Regulatory Claim otherwise covered under this policy, subject to an aggregate maximum sublimit of liability of $100,000 for all such Regulatory Claims (the 'Regulatory Claims Sublimit'[).] The Regulatory Claims Sublimit shall be part of, and not in addition to, the amount shown in item 4D. in the Declarations as the '**Claim expenses** Limit of Liability – Policy Aggregate.'

All other provisions of this policy remain unchanged. Policy (Ex. A), Sections II & IV., as amended by Endorsement No. 2 (the "Regulatory Claims Endorsement").

**The Underlying *FDIC-R* Claim**

24.     The Underlying *FDIC-R* Claim arises out of Jones's preparation of a written appraisal for a residential property located at 1500 Windhaven Circle, Las Vegas, Nevada (the "Property") pursuant to an agreement with MVP Financial Services ("MVP").

25.     According to the FDIC-R, on July 15, 2007, Jones submitted to MVP an appraisal report that valued the Property at $1,375,000, as of July 15, 2007.

26.     On March 28, 2008, AmTrust Bank funded a loan in the amount of $897,000 to Eve Mazzarella as part of a $1,232,500 mortgage for the purchase of the Property.  According to the FDIC-R, AmTrust Bank relied on the appraisal report prepared by Jones in deciding to fund the loan.

27. Mazzarella defaulted on the loan that AmTrust Bank funded in connection with the Property with approximately $985,000 in unpaid principal balance remaining.

28. AmTrust Bank purchased the Property in a foreclosure sale and then resold it for approximately $424,242.36.

29. As noted, the Office of Thrift Supervision closed AmTrust Bank on December 4, 2009, and appointed the FDIC as receiver.

30. On July 17, 2012, the FDIC-R sent a letter to Jones demanding that she reimburse the FDIC-R for losses purportedly caused by her alleged negligence in preparing the appraisal report.

31. On December 3, 2012, the FDIC-R filed a lawsuit against Jones and REVS in the United States District Court for the District of Nevada styled *Federal Deposit Insurance Corp., as Receiver for AmTrust Bank v. Real Estate Valuation Services, et al.*, Case No. 2:12-cv-2057-JCM-NJK (the "FDIC-R Litigation"). The operative complaint in the *FDIC-R* Litigation asserts that lenders and secondary market participants—including AmTrust Bank—were intended third-party beneficiaries of Jones's agreement with MVP to prepare an appraisal report for the Property and further alleges that Jones and REVS materially breached this agreement by preparing an appraisal report that (a) failed to disclose offerings for the sale of the Property within the twelve months prior to the appraisal; (2) failed to disclose all prior transfers of the Property during the three years prior to the appraisal; (3) selected comparable properties that were in neighborhoods superior to the neighborhood in which the Property was located, without making appropriate value adjustments; and (4) represented that the appraisal was prepared in connection with an arms-length transaction, when the transaction was not, in fact, arms-length. The operative complaint in the *FDIC-R* Litigation also asserts claims

against Jones and REVS for negligent misrepresentation and professional negligence.

32.     The parties' proposed joint pre-trial order in the *FDIC-R* Litigation is due on December 2, 2013.  Trial is estimated to last two to three days.

**Jones's Request for Coverage**

33.     On or about July 17, 2012, the FDIC-R sent Navigators a copy of its letter demanding that Jones reimburse its alleged losses caused by her purportedly negligent conduct.

34.     By letter of July 24, 2012, Navigators explained to Jones that, by virtue of the Regulatory Claims Endorsement, the Policy does not afford coverage for any **damages** arising out of the Underlying *FDIC-R* Claim.  Navigators further explained that it would pay **claim expenses** incurred in the defense of the Underlying *FDIC-R* Claim up to the aggregate, maximum sublimit of liability of $100,000 established by the Regulatory Claims Sublimit.   Navigators also agreed to retain defense counsel to represent Jones's interests in connection with the Underlying *FDIC-R* Claim, subject to a full and complete reservation of its rights under the Policy and applicable law, including its rights to pursue a declaratory determination of its duties under the Policy and to seek reimbursement of defense costs and expenses paid in connection with causes of action subsequently determined not to be covered under the Policy.

35.     The defense counsel retained by Navigators later entered an appearance on behalf of Jones in the *FDIC-R* Litigation.

36.     Based on the proceedings to date and the nature of the claims being asserted by the FDIC-R, Jones is likely to incur more than $100,000 in **claim expenses** in connection with the Underlying *FDIC-R* Claim.

## COUNT I

### For a Declaration that the Regulatory Claims Endorsement Bars
### Indemnity Coverage for the Underlying *FDIC-R* Claim

37.     Navigators realleges and incorporates by reference the allegations of Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38.     As noted above, the Policy provides that Navigators will not pay any **claim** based on or arising out of any **Regulatory Claim**.  *See* Policy (Ex. A), Section IV., as amended by the Regulatory Claims Endorsement.

39.     The Underlying *FDIC-R* Claim constitutes a **Regulatory Claim**, as defined by the Policy's Regulatory Claims Endorsement, because it is a **claim** made by the FDIC.  *See* Policy (Ex. A), Section IV., as amended by the Regulatory Claims Endorsement.

40.     Because the Underlying *FDIC-R* Claim is a **Regulatory Claim**, the exclusion in the Regulatory Claims Endorsement applies to bar indemnity coverage.

41.     By reason of the foregoing, Navigators is entitled to a judgment declaring that the Policy provides no indemnity coverage for the Underlying *FDIC-R* Claim.

## COUNT II

### For a Declaration that Navigators Has No Duty to Defend
### Jones or REVS in Connection with the Underlying *FDIC-R* Claim or
### to Pay Claim Expenses Beyond the $100,000 Maximum, Aggregate
### Regulatory Claims Sublimit of Liability

42.     Navigators realleges and incorporates by reference the allegations of Paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     As noted above, the Policy provides that Navigators will not defend any **claim** based on or arising out of any **Regulatory Claim**. *See* Policy (Ex. A), Section IV., as amended by the Regulatory Claims Endorsement. Notwithstanding this exclusion, the Policy—by virtue of the Regulatory Claims Sublimit—obligates Navigators to pay **claim expenses** incurred by Jones in defense of a **Regulatory Claim**, subject to a $100,000 aggregate, maximum sublimit of liability. *Id.*, Section II., as amended by the Regulatory Claims Endorsement.

44.     The Underlying *FDIC-R* Claim constitutes a **Regulatory Claim**, as defined by the Policy's Regulatory Claims Endorsement, because it is a **claim** made by the FDIC.

45.     Because the Underlying *FDIC-R* Claim is a **Regulatory Claim**, the Regulatory Claims Endorsement applies, meaning that Navigators has no duty to defend Jones or REVS in connection with the Underlying *FDIC-R* Claim, but instead is obligated only to pay **claim expenses** incurred by Jones in defense of the Underlying *FDIC-R* Claim, subject to the $100,000 Regulatory Claims Sublimit.

46.     By reason of the foregoing, Navigators is entitled to a judgment declaring that it has no duty under the Policy to defend Jones or REVS in connection with the Underlying *FDIC-R* Claim or to pay any **claim expenses** incurred in connection with the Underlying *FDIC-R* Claim beyond the $100,000 Regulatory Claims Sublimit.

WHEREFORE, Navigators respectfully requests that this Court:

A.     Enter judgment declaring that, for the reasons stated in Count I, the Policy does not provide indemnity coverage for the Underlying *FDIC-R* Claim pursuant to Section IV., as amended by the Regulatory Claims Endorsement;

B.    Enter judgment declaring that, for the reasons stated in Count II and pursuant to Sections II and IV of the Policy, as amended by the Regulatory Claims Endorsement, Navigators has no duty to defend Jones or REVS in connection with the Underlying *FDIC-R* Claim or to pay **claim expenses** incurred in connection with the Underlying *FDIC-R* Claim beyond the $100,000 Regulatory Claims Sublimit;

C.    Award Navigators its fees and costs incurred herein; and

D.    Award Navigators all other relief to which it may be entitled.

Respectfully submitted,

Dated:  November 14, 2013

By:  *Lori E. Sid*

*Of Counsel:*
WILEY REIN LLP
Richard A. Simpson
Charles C. Lemley
1776 K Street NW
Washington, D.C.  20006
Telephone:  (202) 719-7000
Facsimile:  (202) 719-7049

Lori E. Siderman, Bar No. 007515
MEYERS MCCONNELL REISZ
SIDERMAN, P.C.
1745 Village Center Circle
Las Vegas, Nevada 89134
Telephone:  (702) 253-1377
Facsimile:  (702) 248-6192
siderman@meyersmcconnell.com

*Attorneys for Plaintiff Navigators Insurance Company*

# <u>INDEX OF EXHIBITS</u>

**Exhibit  A**          Real Estate Appraisers Errors and Omissions Insurance Policy No. PH11RAL100610IV, which Navigators issued to Carol Jones for the **policy period** August 1, 2011 to August 1, 2012 (the "Policy")

This endorsement # 2, effective 08/01/2011 forms a part of Policy #  PH11RAL100610IV
issued to Carol Jones

# REGULATORY CLAIMS SUBLIMIT - CLAIM EXPENSES ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium charged, it is agreed that the following is added to Section IV. EXCLUSIONS of the policy:

Q.    Based on or arising out of any **claim** made by, or on behalf of, the Federal Deposit Insurance Corporation or any similar federal or state regulatory agency (a "Regulatory Claim").

It is further agreed that the following is added to Section II. LIMITS OF LIABILITY AND DEDUCTIBLE of the policy:

K.    Regulatory Claims Sublimit

Notwithstanding Exclusion Q., the **Company** will pay on behalf of the **Named Insured**, claim expenses incurred by the **Named Insured** in defense of a Regulatory Claim otherwise covered under this policy, subject to an aggregate maximum sublimit of liability of $100,000 for all such Regulatory Claims (the "Regulatory Claims Sublimit"  The Regulatory Claims Sublimit shall be part of, and not in addition to, the amount shown in item 4D. in the Declarations as the "Claim expenses Limit of Liability - Policy Aggregate."

All other provisions of this policy remain unchanged.

# NAVIGATORS INSURANCE COMPANY

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

**THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.**

### PLEASE READ THIS POLICY CAREFULLY.

## REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

### DECLARATIONS

POLICY NUMBER: PH11RAL100610IV   RENEWAL OF: _____

1. NAMED INSURED:   Carol Jones

2. ADDRESS:   8552 Summer Vista Avenue
   Las Vegas, NV 89145

3. POLICY PERIOD:   FROM: 08/01/2011   TO: 08/01/2012
   12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4. LIMITS OF LIABILITY:
   A. $ ___500,000_____ Damages Limit of Liability – Each **Claim**
   B. $ ___500,000_____ Claim Expenses Limit of Liability – Each **Claim**
   C. $ __1,000,000____ Damages Limit of Liability – Policy Aggregate
   D. $ __1,000,000____ Claim Expenses Limit of Liability – Policy Aggregate

5. DEDUCTIBLE (Inclusive of **claim expenses**):   A. $_500-_____Each **Claim**
   B. $_1,000-_____Aggregate

6. PREMIUM: $ 740.00

7. RETROACTIVE DATE:   08/01/2004

8. FORMS ATTACHED:   NAV RAL NIC PF (02/11)  NAV RAL 300 NV (02 11)
   NAV RAL 008 (02 11)     NAV RAL 003 (02 11)     NAV RAL 002 (02 11)

PROGRAM ADMINISTRATOR:   Herbert H. Landy Insurance Agency Inc.
75 Second Ave Suite 410 Needham, MA 02494-2876

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

---

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.

[Emily Miner]
Secretary

[Stanley A. Galanski]
President

NAV RAL DEC (02 11)        Page 1 of 1

This endorsement # 1, effective 08/01/2011 forms a part of Policy # PH11RAL100610IV issued to Carol Jones

# RETIREMENT EXTENDED REPORTING PERIOD AMENDMENT ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium paid, it is agreed that Section VI. EXTENDED REPORTING PERIODS, paragraph D. Retirement Reporting Period Option, subparagraph 1, is deleted in its entirety and replaced with the following:

1. If, after the named Insured reaches the age of 65, and having been continuously insured by the the Company or another insurer through The Realtors Insurance Purchasing Group Association on a claims-made basis for a minimum of 5 years, the Named Insured retires during the policy period, an unlimited Extended Reporting Period will be granted at no additional premium.

All other provisions of this policy remain unchanged.

This endorsement # 3, effective 08/01/2011 forms a part of Policy # PH11RAL100610IV
issued to Carol Jones

## ADDITIONAL INSURED ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

In consideration of the premium charged, it is agreed the person or entity designated below is insured under
this policy solely for vicarious liability arising from professional services performed by the Named Insured. Nothing
contained in this endorsement will serve to increase the Company's limit of liability.

Name of person or entity:

Real Estate Valuation Services, LLC

All other provisions of this policy remain unchanged.

This endorsement # _____, effective _____ forms a part of Policy  #_____

issued to _____.

# NEVADA AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

## REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

Section V. CONDITIONS, paragraph I. Cancellation/Nonrenewal is deleted in its entirety and replaced with the following:

I.   Cancellation/Nonrenewal

   1.   Cancellation

      a.   The **Named Insured** shown in the Declarations may cancel this policy by mailing to the **Company** advance written notice of cancellation.

      b.   The **Company** may cancel this policy by mailing or delivering to the **Named Insured** written notice of cancellation at least:

         i.   10 days before the effective date of cancellation if the **Company** cancels for nonpayment of premium; or

         ii.   30 days before the effective date of cancellation if the **Company** cancels for any other reason.

      c.   Notice of cancellation will state the effective date of cancellation.  The **policy period** will end on that date.

      d.   If this policy is cancelled, the **Company** will send the **Named Insured** any premium refund due.  If the **Company** cancels, the refund will be pro rata.  If the **Named Insured** cancels, the refund may be less than pro rata.  The cancellation will be effective even if the **Company** has not made or offered a refund.

      e.   If notice is mailed, proof of mailing will be sufficient proof of notice.

      f.   If this policy has been in effect for 70 days or more, or if this policy is a renewal of a policy the **Company** issued, the **Company** may cancel only for one or more of the following reasons:

         i.   Nonpayment of premium;

         ii.   Conviction of the **Named Insured** of a crime arising out of acts increasing the hazard insured against;

         iii.   Discovery of fraud or material misrepresentation in obtaining the policy or in presenting **Claim** thereunder;

         iv.   Discovery of an act or omission or a violation of any condition of the policy which occurred after the first effective date of the current policy, and substantially and materially increases the hazard insured against;

  v. A material change in the nature or extent of the risk, occurring after the first effective date of the current policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

  vi. A determination by the commissioner that continuation of the Company's present volume of premiums would jeopardize the Company's solvency or be hazardous to the interests of the Company's policyholders, creditors or the public;

  vii. A determination by the commissioner that the continuation of the policy would violate, or place the Company in violation of, any provision of the code.

 g. If this policy is written for a term longer than one year, the Company may cancel for any reason at an anniversary, by mailing or delivering written notice of cancellation to the Named Insured at the last mailing address known to the Company at least 60 days before the anniversary date.

2. Nonrenewal

 a. If the Company elects not to renew this policy, the Company will mail or deliver to the Named Insured shown in the Declarations a notice of intention not to renew at least 60 days before the agreed expiration date.

 b. If notice is mailed, proof of mailing will be sufficient proof of notice.

 c. The Company need not provide this notice if:

  i. The Named Insured has accepted replacement coverage.

  ii. The Named Insured has requested or agreed to nonrenewal; or

  iii. This policy is expressly designated as nonrenewable.

3. Notices

 a. Notice of cancellation or nonrenewal in accordance will be mailed, first class or certified, or delivered to the Named Insured at the last mailing address known to the Company and will state the reason for cancellation or nonrenewal.

 b. The Company will also provide a copy of the notice of cancellation, for both policies in effect less than 70 days and policies in effect 70 days or more, to the agent who wrote the policy.

All other terms and conditions of this policy remain unchanged.

U.S. TREASURY DEPARTMENTS
OFFICE OF FOREIGN ASSETS CONTROL ("OF AC")
ADVISORY NOTICE TO POLICY HOLDERS

No coverage is provided by this Policy Holder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

§   Foreign agents;
§   Front organizations;
§   Terrorists;
§   Terrorist organizations; and
§   Narcotics traffickers;

As "Specially Designated National and Blocked Persons". This list can be located on the United States Treasury s web site-http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



*Insuring A World In Motion*

NAV OFAC

# NAVIGATORS INSURANCE COMPANY
A "Stock" Company
Home Office: One Penn Plaza, New York, NY 10119

## THIS IS A CLAIMS MADE AND REPORTED POLICY.
## PLEASE READ THE ENTIRE POLICY CAREFULLY.

## REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

Words and phrases that appear in bold print have special meanings that are defined in section III., DEFINITIONS.

I.   INSURING AGREEMENTS

   A.  Coverage

   The Company will pay on behalf of the Named Insured all sums in excess of the deductible that the Named Insured becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against the Named Insured and reported in writing to the Company during the policy period or extended reporting period (if applicable) by reason of an act or omission, including personal injury, in the performance of professional services by the Named Insured, provided that:

   1.  No such act or omission, or related act or omission, was committed prior to the retroactive date; and

   2.  Prior to the inception date of the first policy issued by the Company, and continuously renewed, the Named Insured had no basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim.

   B.  Defense

   The Company has the right and duty to defend any claim against the Named Insured even if any of the allegations of the claim are groundless, false or fraudulent.  Defense counsel may be designated by the Company or, at the Company's option, by the Named Insured with the Company's written consent and subject to the Company's guidelines.

   C.  Settlement

   The Company will have the right to make, with the consent of the Named Insured, any settlement of a claim under this policy.  If the Named Insured refuses to consent to a settlement within the policy's applicable damages limit of liability that is recommended by the Company and acceptable to the claimant, then the Company's limit of liability for claim expenses will be reduced to the amount of claim expenses incurred up to the date on which the Named Insured refused to consent to the settlement.  Thereafter, there shall be a single combined limit of liability for both damages and claim expenses in an amount of total damages for which the claim could have been settled.  The Company is not obligated to pay any damages or claim expenses, or to defend or continue to defend any such claim, after this single combined limit of liability has been exhausted.

D.  Exhaustion of Limits

The **Company** is not obligated to pay any **damages** or **claim expenses**, or to defend or continue to defend any **claim**, after the **damages** limit of liability has been exhausted, or after the **Company** has deposited the remaining **damages** limit of liability into a court of competent jurisdiction or tendered the remaining **damages** limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**, regardless of whether the **claim expenses** limit of liability has been exhausted.

II.  LIMITS OF LIABILITY AND DEDUCTIBLE

A.  Damages Limit of Liability - Each Claim

Subject to paragraph C. below, the **Company's** limit of liability for **damages** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in item 4A. in the Declarations for "Damages Limit of Liability - Each Claim".

B.  Claim expenses Limit of Liability - Each Claim

Subject to paragraph D. below, the **Company's** limit of liability for **claim expenses** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in item 4B. in the Declarations for "Claim expenses Limit of Liability - Each Claim".

C.  Damages Limit of Liability - Policy Aggregate

The **Company's** limit of liability for **damages** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in item 4C. in the Declarations as the "Damages Limit of Liability - Policy Aggregate".

D.  Claim expenses Limit of Liability - Policy Aggregate

The **Company's** limit of liability for **claim expenses** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in item 4D. in the Declarations as the "Claim expenses Limit of Liability - Policy Aggregate."

E.  Deductible

1.  Each Claim

Subject to paragraph 2. below, the deductible amount shown in Item 5A. in the Declaration is the **Named Insured's** deductible obligation for each **claim** and applies to the payment of **damages** and **claim expenses**. The deductible will be paid by the **Named Insured**. The limits of liability set forth in the Declarations are in addition to, and in excess of, the deductible.

2.  Aggregate

The deductible amount shown in Item 5B. in the Declarations is the **Named Insured's** maximum deductible obligation for all **claims**.

F.  Early Claim Resolution Incentive

If a claim is resolved by settlement, with the consent of the Named Insured and the Company, within one (1) year following the date that the claim is reported in writing to the Company, the Named Insured will be reimbursed or credited 50% of the deductible, but not to exceed a reimbursement of $5,000 per claim and $25,000 per policy period for all such claims resolved or concluded in accordance with this section II.F.

G.  Multiple Claims and Claimants

The limits of liability for damages and claim expenses shown in the Declarations is the maximum amount the Company will pay under this policy for damages and claim expenses, respectively, regardless of the number of claims made or claimants.  All related claims, whenever made, shall be considered a single claim first made when the earliest of the related claims was first made, and first reported when the earliest of the related claims was reported in writing to the Company; provided, however, that the Named Insured must report all claims as soon as reasonable in accordance with Section V. CONDITIONS, paragraph A.1.

H.  Multiple Policies

If this policy and any other policy issued by the Company provide coverage for the same claim against the Named Insured, the maximum limit of liability under all the policies combined shall not exceed the highest remaining applicable limit of liability for the claim under any one policy.

I.  Supplementary Payments

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

1.  Reimbursement of Expenses

The Company will pay up to $500.00 for loss of earnings to the Named Insured for each day, or part of a day, the Named Insured is in attendance, at the Company's request, at a trial, hearing, mediation or arbitration proceeding involving a claim against the Named Insured. The maximum amount payable, regardless of the number of trials, hearings, mediations or arbitration proceedings, shall be $7,500 per claim and $25,000 per policy period.

2.  Disciplinary Actions

The Company will reimburse the Named Insured for reasonable attorneys fees, costs and expenses incurred resulting from the investigation or defense of a disciplinary action first received by the Named Insured and reported in writing to the Company during the policy period by reason of an act or omission in the performance of professional services.  The maximum amount payable, regardless of the number of disciplinary actions, shall be $2,500 per claim and $25,000 per policy period.  The Company shall not be obligated to defend any disciplinary action, or pay any fine, penalty or award resulting from any disciplinary action.

3.  Subpoena Expenses

The Company will pay expenses incurred while assisting the Named Insured in responding to a subpoena which the Named Insured first receives and reports in writing to the

Company during the policy period resulting from the performance of **professional services** by the Named Insured. The maximum amount payable for subpoena expenses is $5,000 per subpoena; provided, however, that all subpoenas arising out of **related acts or omissions** shall be deemed to constitute a single subpoena.

J. Coverage Extension

The **Company** will pay, as part of the applicable Limit of Liability, up to $100,000 to the Named Insured for damages and claim expenses as a result of all claims reported to the Company during the policy period by reason of a claim brought against the Named Insured, and arising out of professional services rendered on behalf of the Named Insured, for discrimination on the basis of race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference, including resulting personal injury.

This sub-limit is an aggregate limit of liability that is included within, and not addition to the **Damages** or Claim Expenses Limit of Liability    Policy Aggregate stated in the Declarations.

## III. DEFINITIONS

A. **Bodily injury** means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. **Bodily injury** also means mental illness, mental anguish, emotional distress, pain, suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

B. **Claim** means a demand for money or services received by the Named Insured arising out of an act or omission in the performance of **professional services**. A claim also includes the service of suit or the institution of an arbitration proceeding against the Named Insured.

C. **Claim expenses** means:

1. Fees charged by attorneys designated by the Company or designated by the Named Insured with the Company's prior written consent;

2. All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a claim, if incurred by the Company or by the Named Insured with the Company's prior written consent; and

3. Premiums on appeal bonds, attachment bonds or similar bonds; provided, however, the Company is not obligated to apply for or furnish any such bond.

**Claim expenses** do not include fees, costs or expenses of employees or officers of the Company, or salaries, loss of earnings or other remuneration by or to the Named Insured.

D. **Company** means the insurance company named in the Declarations.

E. **Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the Company's written consent. **Damages** also includes punitive or exemplary amounts, to the extent such amounts are insurable under the applicable state law.

**Damages** do not include:

1. The return, reduction or restitution of fees, commissions, expenses or costs for professional services performed, or to be performed, by the Named Insured and injuries that are a consequence of any fees, commissions, expenses or costs charged by the Named Insured;

2. Fines, penalties, forfeitures or sanctions;

3. The multiplied portion of any multiplied awards; or

4. Injunctive or declaratory relief.

F. Disciplinary action means a proceeding before any state licensing board, local real estate board or other governmental body regulating professional conduct, alleging misconduct in providing professional services. Disciplinary action does not include criminal charges.

G. Extended reporting period means the period of time after the end of the policy period for reporting claims to the Company that are made against the Named Insured during the applicable extended reporting period by reason of an act or omission, which was committed prior to the end of the policy period and on, or subsequent to, the retroactive date and is otherwise covered by this policy.

H. Fungi means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

I. Named Insured means the person specified in item 1. in the Declarations.

J. Personal injury means injury other than bodily injury arising out of one or more of the following offenses, by reason of an act or omission by the Named Insured in the performance of professional services:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that:

   a. Slanders or libels a person or organization or disparages a person s or organization s goods, products or services; or

   b. Violates a person s right of privacy;

   Except, in either case, oral or written publication in any manner which arises out of advertising, broadcasting or telecasting activities conducted by, or on behalf of, the Named Insured.

K. Policy period means the period of time from the effective date shown in item 3. in the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

L. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M.  Property damage means:

    1.   Physical Injury to tangible property, including all resulting loss of use of that property; or

    2.   Loss of use of tangible property that is not physically injured.

N.  Professional services means services performed for others by the Named Insured in the capacity as a properly licensed or certified appraiser of real estate, notary public, or a member of a real estate accreditation, standards review or similar real estate board or committee.

    Professional Services does not include the supervision of, subcontracting to, assignment to or referral of any portion of any contract, project or engagement by the Named Insured.

O.  Related claims means all claims arising out of a single act or omission or related acts or omissions in the performance of professional services.

P.  Related acts or omissions means all acts or omissions that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

Q.  Retroactive date means the date shown in item 7. in the Declarations.


## IV. EXCLUSIONS

The Company will not defend or pay any claim:

A.  Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by the Named Insured;

B.  Based on or arising out of bodily injury or property damage;

C.  Based on or arising out of discrimination, humiliation, harassment, or misconduct.  Including, but not limited to, claims based on allegations relating to an individual s race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference.  However, this exclusion does not apply to any coverage afforded by Section II. Limit of Liability and Deductible, paragraph J. Coverage Extensions;

D.  Based on or arising out of the insolvency or bankruptcy of the Named Insured;

E.  Based on or arising out of:

    1.   Any disputes involving the Named Insured's fees, commissions or charges;

    2.   The conversion, misappropriation, commingling or defalcation of funds or other property;

    3.   The failure to pay or collect premium, escrow or tax money; or

    4.   The gaining of any personal profit or advantage to which the Named Insured is not legally entitled;

F.  Based on or arising out of the representation of clients in connection with any securities transaction (either registered or exempt) including, but not limited to, bond or other debt offerings, public stock offerings, property syndication or real estate investment trusts;

G. Based on or arising out of the actual or attempted purchase of property by the Named Insured;

H. Based on or arising out of the actual or attempted appraisal of property by the Named Insured on or after the date or time of the act or omission giving rise to such claim, if:

    1. The Named Insured in any part owned such property;

    2. The Named Insured was the developer, builder, real estate broker or salesperson of such property;

    3. Such appraisal services were in exchange for stock, partial ownership or investment in such property; or

    4. The Named Insured was employed or subcontracted by a real estate broker or sales person who was a party to any transaction involving the appraised property;

I. Based on or arising out of actual or attempted purchase of property by, or appraisal of property developed, constructed or owned by:

    1. Any entity in which the Named Insured has financial interest;

    2. Any entity which has any financial interest in the Named Insured; or

    3. Any entity which is under the same financial control as the Named Insured, provided that such financial interest existed at the time of the act or omission giving rise to the claim;

J. Based on or arising out of any actual or alleged violation of:

    1. The Employee Retirement Income Security Act of 1974;

    2. The Securities Act of 1933;

    3. The Securities Exchange Act of 1934; or

    4. Any state Blue Sky or Securities law;

    Or any rules, regulations or amendments issued in relation to such acts, or similar state or federal statutes or regulations, including any claim based upon common law principles of liability;

K. Based on or arising out of any guarantee or promise of future status, performance or valuation in the course of performing professional services by the Named Insured;

L. Based on or arising out of:

    1. The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of pollutants;

    2. Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of pollutants; or

3.  The installation, removal, disposal, handling, use or existence of, exposure to, contact with, or ingestion of lead paint or any substance or matter containing lead paint or the residue of lead paint;

M.  Based on or arising out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or any loss cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, fungi or bacteria, by the Named Insured  or by any other person or entity;

N.  Based on or arising out of liability assumed by the Named Insured under any contract or agreement, unless such liability would have attached to the Named Insured even in the absence of such contract or agreement;

O.  Based on arising out of misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right or unauthorized use of confidential, privileged or non-public material or information;

P.  Based on or arising out of the sale of insurance or the failure to effect or maintain adequate levels of insurance;

Q.  Based on or arising out of the alleged notarized certification or acknowledgement by the Named Insured of a signature on any document that the Named Insured did not witness being placed on the document;

R.  Based on or arising out of the rendering of, or failure to render, professional services by the Named Insured as an employee, owner, partner, stockholder, director or officer of any business enterprise not named in the Declarations.


V.  CONDITIONS

A.  Reporting of Claims and Potential Claims:

1.  The Named Insured, as a condition precedent to the obligations of the Company under this policy, will give written notice to the Company, as soon as reasonable, of any claim made against the Named Insured.

2.  If during the policy period the Named Insured becomes aware of any act or omission which may reasonably be expected to be the basis of a claim against the Named Insured, including, but not limited to, any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the Named Insured responsible for any alleged act or omission and gives written notice to the Company with full  particulars, including:

a.  The specific act or omission;

b.  The dates and persons involved;

c.  The identity of anticipated or possible claimants;

d.  The circumstances by which the Named Insured first became aware of the possible claim; and

    e.   Potential damages or injury.

Then any claim that is subsequently made against the Named Insured arising out of such act or omission will be deemed to have been made on the date such written notice was received by the Company.

3.   Notices pursuant to Conditions A.1 and A.2 above must be mailed to the Company at the following address:

Navigators Pro    Claims Department
One Penn Plaza, 32nd Floor
New York, NY  10119
Fax: 212-613-4300
navproclaims@navg.com

B.  Claim Reporting Grace Period

This policy will provide coverage for claims that are first made against the Named Insured during the policy period and reported by the Named Insured in writing to the Company within thirty (30) days after the expiration of the policy period, provided that prior to the expiration of this policy, the Named Insured was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due.

The claim reporting grace period does not extend the policy period.

C.  Assistance and Cooperation

1.   The Named Insured will cooperate with the Company and upon the Company's request, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a claim.

2.   The Named Insured will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to the Named Insured in connection with a claim.

3.   The Named Insured will not, except at the Named Insured's own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the Company. The Company shall have no obligation to pay or reimburse any person or entity for sums expended to defend any claim otherwise covered under this policy prior to written notice of such claim being received by the Company.

D.  Action against the Company

1.   No action may be brought against the Company unless, as a condition precedent thereto:

    a.   The Named Insured has fully complied with all the terms of this policy; and

    b.   Until the amount of the Named Insured's obligation to pay has been finally determined either by judgment against the Named Insured after actual trial and appeal or by written agreement of the Named Insured, the claimant and the Company.

2. Nothing contained in this policy will give any person or organization the right to join the Company as a defendant or co-defendant or other party in any action against the Named Insured to determine the Named Insured's liability.

E. Bankruptcy

Bankruptcy or insolvency of the Named Insured or of the Named Insured's estate will not relieve the Company of any of its obligations hereunder.

F. Other Insurance

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance.

G. Subrogation

In the event of any payment for any claim under this policy, the Company will be subrogated in the amount of such payment to all the Named Insured's rights of recovery against any person or organization. The Named Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Named Insured will do nothing to prejudice such rights.

H. Changes

Notice to any agent of the Company, or knowledge possessed by any such agent or by any other person, will not effect a waiver or a change in any part of this policy and will not prevent or preclude the Company from asserting or invoking any right or provision of this policy. None of the provisions of this policy may be waived, changed or modified except by a written endorsement issued by the Company to form a part of this policy.

I. Cancellation/Nonrenewal

1. This policy may be cancelled by the Named Insured by returning it to the Company. The Named Insured may also cancel this policy by giving written notice to the Company stating at what future date cancellation is to be effective.

2. The Company may cancel or non-renew this policy by sending written notice to the Named Insured at the address last known to the Company. The Company will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the Company cancels this policy because the Named Insured has failed to pay a premium when due, this policy may be canceled by the Company by mailing to the Named Insured written notice stating when, not less than 10 days thereafter, such cancellation will be effective. The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the policy period. Delivery of such written notice either by the Named Insured or by the Company will be equivalent to mailing.

3. If the Company cancels this policy, the earned premium will be computed pro rata. If the Named Insured cancels this policy, the Company will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this policy.

J. Territory

This policy applies to an act or omission taking place anywhere in the world provided that any suit is brought against the **Named Insured** within the United States of America, its territories or possessions, Puerto Rico or Canada.

K. Entire Contract

By acceptance of this policy the **Named Insured** attests that:

1. All of the information and statements provided to the **Company** by the **Named Insured**, including, but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the **Named Insured**;

2. This policy is issued in reliance upon the **Named Insured's** representations;

3. This policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Named Insured** to the **Company**, embody all of the agreements existing between the **Named Insured** and the **Company** and shall constitute the entire contract between the **Named Insured** and the **Company**; and

4. Any material misrepresentation or concealment by the **Named Insured** or the **Named Insured's** agent will render the policy null and void and relieve the **Company** from all liability herein.

L. Notices

Other than **claims**, any notices required to be given by the **Named Insured** will be submitted in writing to the **Company**, or its authorized representative. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

M. Assignment

No assignment of interest of the **Named Insured** under this policy is valid, unless the **Company's** written consent is endorsed hereon.

N. Liberalization

If the **Company** obtains approval for any amended state filing in the jurisdiction in which this policy is issued that would broaden coverage under this policy form NAV RAL NIC PF (02 11) without additional premium at any time during the current **policy period**, the broadened coverage will immediately apply to this policy, except that it will not apply to **claims** that were first made against the **Named Insured** prior to the effective date of such revision.

O. Examination of Your Books and Records

The **Company** may examine and audit the books and records of the **Named Insured**, as they relate to this policy, at any time during the **policy period** and up to three (3) years afterward.

P. Reimbursement

While the **Company** has no duty to do so, if the **Company** pays **damages and claim expenses**:

1. Within the amount of the applicable deductible; or

2. In excess of the applicable Limit of Liability; or

3. Under a reservation of rights to seek reimbursement, and it is determined that the **Company** is entitled to reimbursement.

Upon written demand, the **Named Insured** shall repay such amounts to the **Company** within 30 days. Failure to pay any amount indicated may lead to policy termination.

## VI. EXTENDED REPORTING PERIODS

A. Automatic Extended Reporting Period

If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of real estate appraisers errors and omissions insurance within sixty (60) days of the termination of the **policy period**. This automatic **extended reporting period** will terminate after sixty (60) days.

B. Optional Extended Reporting Period

1. If this policy is cancelled or non-renewed by either the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **extended reporting period** of one, two or three years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:

   a. Written notice to the **Company**; and

   b. With the written notice, the amount of additional premium described below.

2. The non-refundable additional premium for the optional **extended reporting period** shall be:

   a. For a one (1) year **extended reporting period**, 100% of the annual premium for the policy; or

   b. For a two (2) year **extended reporting period**, 135% of the annual premium for the policy; or,

   c. For a three (3) year **extended reporting period**, 150% of the annual premium for the policy.

3.  The first sixty (60) days of the optional extended reporting period, if it is purchased, shall run concurrently with the automatic extended reporting period.

C.  **Death or Disability Reporting Period Option**

In the event the Named Insured dies or becomes permanently and totally disabled during the policy period, an unlimited extended reporting period will be granted at no additional premium, provided that:

1.  Within ninety (90) days of the of the death or permanent and total disability, the Named Insured or the Named Insured's estate requests the unlimited extended reporting period; and

2.  The Named Insured's estate furnishes written evidence and proof of the Named Insured's death; or

3.  The Named Insured provides evidence and proof of the permanent and total disability, including the date of the actual disability and written certification by the Named Insured's attending physician.

D.  **Retirement Reporting Period Option**

1.  If, after the Named Insured reaches the age of 65, and having been continuously insured by the Company on a claims-made basis for a minimum of 5 years, the Named Insured retires during the policy period, an unlimited extended reporting period will be granted at no additional premium; or

2.  If the Named Insured retires from the appraisal business during the policy period, an unlimited extended reporting period can be purchased for a non-refundable additional premium of 160% of annual premium.

Such right must be exercised by the Named Insured within sixty (60) days of the retirement by providing:

a.  Written notice to the Company; and

b.  With the written notice, if applicable, the amount of additional premium described in paragraph D.2. above.

E.  **Extended Reporting Period Limits of Liability**

The damages limit of liability and claim expenses limit of liability of the Company for all claims reported during any extended reporting period will be part of and not in addition to the damages limit of liability and claim expenses limit of liability, respectively, for the policy period set forth in item 4. in the Declarations.

F.  **Elimination of Right to Any Extended Reporting Period**

There is no right to any extended reporting period if the Company cancels or refuses to renew this policy due to:

1.  Nonpayment of amounts due under this policy;

2.  Noncompliance by the Named Insured with any of the terms and conditions of this policy;

3.  Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Named Insured** for this policy.

G.  Extended Reporting Period - Not a New Policy

The **extended reporting period** will not be construed to be a new policy and any **claim** submitted during such period will otherwise be governed by this policy.

Exhibit A